<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| TERRY P. DOR,<br><br>                    Plaintiff,<br><br>          v.<br><br>TD BANK, *et al.*,<br><br>                    Defendants. | Case No. 2:21-cv-18955 (BRM) (LDW)<br><br>**OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before the Court is Defendants TD Bank, N.A. ("TD Bank"), Lenore H. Gordon ("Ms. Gordon"), and Keith Nisbet's ("Mr. Nisbet") (collectively, "Defendants") Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. (ECF No. 47.) *Pro se* Plaintiff Terry P. Dor ("Plaintiff") filed an Opposition (ECF No. 49), and Defendants filed a Reply (ECF No. 54). Plaintiff subsequently filed supplemental exhibits in further support of his Opposition. (ECF Nos. 50, 52.) Having carefully reviewed the submissions filed in connection with the Motion and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause having been shown, Defendants' Motion for Summary Judgment is **GRANTED**.

I.     **BACKGROUND**

A.  **Factual Background**

This is an employment discrimination matter involving Plaintiff's allegations that Defendants discriminated against him (1) on the basis of race/color and (2) on the basis of national origin in violation of Title VII of the Civil Rights Act of 1967 ("Title VII"). (*See generally* ECF

No. 6 (Am. Compl.); *see also* ECF No. 49-1 (Pl.'s Opp'n Br.) at 4.) Plaintiff identifies his race as

Black and Indian and identifies his national origin as "a United States citizen, African American,

Caribbean American, and Haitian American." (ECF No. 49 (Pl.'s Resp. to Defs.' Statement of

Undisputed Material Facts in Supp. of Mot. for Summ. J.) ¶ 1 (citing Dep. of Terry Dor at 30:2-

30:4, 31:6-31:13).) Plaintiff was an employee of TD Bank from September 24, 2018 until

November 11, 2020 when TD Bank terminated his employment. (*Id.* ¶¶ 2, 37 (citing Dep. of Terry

Dor 84:13-84:21, 86:16-86:22, 287:2-287:22, Ex. 24; and then citing Dep. of Terry Dor 237:8-

237:15, 238:7-238:10, 238:19-238:24).) During his tenure at TD Bank, Plaintiff reported to Ms.

Gordon, and Ms. Gordon reported to Mr. Nisbet. (*Id.* ¶ 3 (citing Dep. of Terry Dor at 35:3-35:16).)

   Plaintiff alleges he was unlawfully discriminated against in that he was "verbally

disrespected because of [his] race, national origin, and color" and was "denied trainings, fair

compensation, bonus, transfer to other departments, transfer to other offices, networking

opportunities, [and] proper working equipment" at TD Bank. (ECF No. 6 at 3.) Plaintiff further

claims Ms. Gordon bullied him (*id.*) and that Mr. Nisbet failed to relay these concerns to human

resources, which he states was discriminatory (ECF No. 49-1 at 10, 13). Among other things,

Plaintiff claims he suffered the following acts of discrimination while at TD Bank: (1) Mr. Nisbet's

"admission to not mentioning George Floyd on a conference call is a direct inference of implied

discrimination" (*id.* at 1, 10, 13, 19); (2) Ms. Gordon's comment "Blows Smoke"[1] was "an act of

---

[1] While not clear from Plaintiff's Opposition, the Court assumes for purposes of this Motion that
Plaintiff's reference to Ms. Gordon's comment "Blows Smoke" is referring to the following
statement that appears in Exhibit 1 attached to Ms. Gordon's deposition transcript: "When [Ms.]
Gordon coaches him, he just 'blows smoke' – says the right things but does not do anything about
it. . . ." (*See* ECF No. 49-5 (Dep. of Lenore Gordon), Ex. 1 (PDF pg. 206); *see also* ECF No. 49
(Pl.'s Additional Statement of Undisputed Material Facts) ¶ 21 ("It is a proven fact and common
knowledge that when people smoke their pigmentation changes. . . . My natural features, skin color
are characteristics of my protected class. Ms. Gordon's derogatory comment 'Blows Smoke' was

discrimination based on color" (*id.* at 1–2, 10, 13, 18–19); (3) Ms. Gordon separating Haiti as part of the Caribbean in a speech was an "attack" on Plaintiff's national origin (*id.* at 2); (4) Ms. Gordon created wage discrimination in that "both black female and male employees [were] paid the least amongst asset managers [at TD Bank]" (*id.*); (5) "Ms. Gordon deployed a Herrenvolk system in the office disparaging people of Caribbean origins with lesser pay and poor treatment" (*id.* at 14); (6) not allowing him to attend a golf networking, canceling an asset manager training, allowing one manager to work at different locations, and terminating him and promoting a colleague shortly thereafter were all additional "examples of discrimination under Title VII based on race, color, or national origin" (*id.* at 9, 19, 21, 23); and (7) he was terminated during the COVID-19 pandemic, a time when he should not have been fired because there was a memorandum from TD Bank's CEO stating "there will be no 2020 job loss due to performance as it relates to the COVID-19 pandemic" (*id.* at 18). Plaintiff further alleges he was discriminated against at TD Bank because he "experienced disparaging treatment[,]" "was denied transfers and networking opportunities[,]" "was denied reasonable accommodation [including an] extra screen[,]" and his "annual reviews were weighted at 50% whereas [his] colleagues['] annual reviews were weighted at 0%." (*Id.* at 2.)

Defendants, however, argue Plaintiff was ultimately terminated because of "his ongoing deficient performance and failure to complete his [performance improvement plan ('PIP')]." (ECF No. 47-1 (Defs.' Br. in Supp. of Mot. for Summ. J.) at 11; *see also id.* at 1.) Defendants assert Plaintiff's allegations of discrimination are based on "his own speculation and beliefs, not evidence, which is insufficient to overcome summary judgment." (*Id.* at 1.)

---

recorded by HR and is direct proof of discrimination based on my protected characteristic [to] which I take high offense. . . .").)

### B.  Procedural History

On October 15, 2021, Plaintiff filed a Complaint against Defendants. (ECF No. 1.) On November 5, 2021, Plaintiff filed an Amended Complaint against Defendants.[2] (ECF No. 6.) On December 8, 2021, Defendants filed an Answer to Plaintiff's Amended Complaint, denying Plaintiff's allegations and asserting affirmative and additional defenses. (ECF No. 8.) The parties then engaged in discovery. Following the close of discovery, Defendants filed a Motion for Summary Judgment. (ECF No. 47.) Plaintiff filed an Opposition (ECF No. 49), and Defendants filed a Reply (ECF No. 54). Plaintiff subsequently submitted supplemental exhibits comprising approximately 125 pages in further support of his Opposition. (ECF Nos. 50, 52.) For the reasons stated below, the Court grants summary judgment on all claims in favor of Defendants.

## II.  LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "On motions for summary judgment, the movant shall furnish a statement which sets forth material facts as to which there does not exist a genuine issue, in separately numbered paragraphs citing to the affidavits and other documents submitted in support of the motion." L. Civ. R. 56.1(a). A party asserting a genuine dispute of material fact must support the assertion by either "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot

---

[2] Plaintiff's Amended Complaint appears nearly identical to his original Complaint, except in his Amended Complaint, Plaintiff checked the box requesting a jury trial, which was not checked in his original Complaint. (*Compare* ECF No. 1, *with* ECF No. 6.)

produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). A factual dispute "is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party," and "is material only if it might affect the outcome of the suit under governing law." *Kaucher v. Cty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "Unsupported allegations, subjective beliefs, or argument alone, however, cannot forestall summary judgment." *Read v. Profeta*, 397 F. Supp. 3d 597, 625 (D.N.J. 2019) (citations omitted). Irrelevant or unnecessary factual disputes will also not preclude a grant of summary judgment. *See Anderson*, 477 U.S. at 248. Additionally, "mere speculation does not create genuine issues of material fact." *Dellapenna v. Tredyffrin/Easttown Sch. Dist.*, 449 F. App'x 209, 215–16 (3d Cir. 2011) (citing *Robertson v. Allied Signal, Inc.*, 914 F.2d 360, 382 n.12 (3d Cir. 1990)).

The party moving for summary judgment has the initial burden of showing the basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once a movant adequately supports its summary judgment motion, the burden shifts to the nonmovant to "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255)). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000) (quoting *Anderson*, 477 U.S. at 255). In other words, in

deciding a party's summary judgment motion, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 255. "Summary judgment is appropriate only when there are no genuine issues of material fact, drawing all justifiable inferences in favor of the nonmovant." *Adams v. Fayette Home Care & Hospice*, 452 F. App'x 137, 139 (3d Cir. 2011) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 255 (1986)).

If the moving party bears the burden of proof at trial, summary judgment is not appropriate if the evidence is susceptible to different interpretations or inferences by the trier of fact. *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999); *see also id.* at 553 n.9 (noting "summary judgment is rarely granted in a plaintiff's favor in cases where the issue is a defendant's racial motivation, such as disparate treatment suits under Title VII or racial discrimination claims under 42 U.S.C. § 1981"). On the other hand, if the non-moving party bears the burden of proof at trial, "summary judgment is warranted if the nonmovant fails to 'make a showing sufficient to establish the existence of an element essential to [its] case.'" *Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993) (alteration in original) (quoting *Celotex Corp.*, 477 U.S. at 322). A "genuine issue as to any material fact" cannot exist if a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322–23. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323. A material fact raises a "genuine" dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Williams v. Borough of W. Chester*, 891 F.2d 458, 459 (3d Cir. 1989) (quoting *Anderson*, 477 U.S. at 248).

## III.   DECISION

Title VII prohibits employment discrimination on the basis of race, color, religion, sex, or national origin. *Slagle v. Cnty. of Clarion*, 435 F.3d 262, 265 (3d Cir. 2006) (citing 42 U.S.C. § 2000e-2). "To prevail on a Title VII claim of discrimination or retaliation, a plaintiff must first establish a prima facie case." *Rhoden v. Childrens Hosp. of Pittsburgh of UPMC Health Sys.*, 749 F. App'x 86, 88 (3d Cir. 2018). A *prima facie* case of national origin or race discrimination requires a plaintiff to establish that: "(1) she is a member of a protected class; (2) she was qualified for her position; (3) she suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances that give rise to an inference of unlawful discrimination." *Id.* (citations omitted). "[N]ational origin and race are protected classes under Title VII[.]" *Santos v. Iron Mountain Film & Sound*, Civ. A. No. 12-04214, 2013 WL 6054832, at *4 (D.N.J. Nov. 14, 2013). Discrete acts of discrimination can include "termination, failure to promote, denial of transfer, or refusal to hire." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002). The Third Circuit has described an adverse employment action "as an action by an employer that is serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." *Jones v. Se. Pa. Transp. Auth.*, 796 F.3d 323, 326 (3d Cir. 2015) (quoting *Storey v. Burns Int'l Sec. Servs.*, 390 F.3d 760, 764 (3d Cir. 2004)). A plaintiff can show circumstances giving rise to an inference of unlawful discrimination by either (1) introducing "evidence of comparators (i.e., similarly situated employees who (a) were not members of the same protected class and (b) were treated more favorably under similar circumstances)"; or (2) relying on "circumstantial evidence that otherwise shows a causal nexus between his membership in a protected class and the adverse employment action." *Greene v. Virgin Islands Water & Power Auth.*, 557 F. App'x 189, 195 (3d Cir. 2014).

7

The *McDonnell Douglas* burden-shifting framework applies to claims of discrimination under Title VII. *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 797 (3d Cir. 2003) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). This framework has three basic steps. First, the plaintiff must establish a *prima facie* case of discrimination by a preponderance of the evidence. *Sarullo*, 352 F.3d at 797 (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993)). Second, if the plaintiff establishes a *prima facie* case of discrimination, then the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its action or decision. *Sarullo*, 352 F.3d at 797 (quoting *McDonnell Douglas*, 411 U.S. at 802). The employer "satisfies its burden of production by introducing evidence which, [if] taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision." *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994) (citing *St. Mary's Honor Ctr.*, 509 U.S. at 509). "The employer need not prove that the tendered reason *actually* motivated its behavior, as throughout this burden-shifting paradigm the ultimate burden of proving intentional discrimination always rests with the plaintiff." *Id.* (emphasis in original) (citing *Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253–54 (1981)). Third, if the employer meets this "relatively light burden," *Fuentes*, 32 F.3d at 763, then "the burden returns to the [plaintiff], who must show by a preponderance of the evidence that the employer's proffered reason is pretextual. *Anderson v. Boeing Co.*, 694 F. App'x 84, 86 (3d Cir. 2017) (citing *McDonnell*, 411 U.S. at 804). To show pretext, "a plaintiff must point to direct or circumstantial evidence 'from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.'" *Jackson v. Planco*, 431 F. App'x 161, 165 (3d Cir. 2011) (quoting *Fuentes*, 32 F.3d at 764). If each party meets its burden at each stage of this framework, then summary judgment is inappropriate. *See*

8

*Whishkin v. Potter*, 476 F.3d 180, 185 (3d Cir. 2007). But summary judgment may be appropriate if a party fails to meet its burden under this framework. *Dellapenna v. Tredyffrin/Easttown Sch. Dist.*, 449 F. App'x 209, 215–16 (3d Cir. 2011).

### A.  Summary Judgment Is Warranted as to the Title VII Claims Against TD Bank

Defendants argue they are entitled to summary judgment because "[t]here are no genuine issues of material fact" and "[n]o reasonable fact finder could conclude that Defendants intentionally discriminated against Plaintiff because of his race, color, or national origin." (ECF No. 47-1 (Defs.' Br. in Supp. of Mot. for Summ. J.) at 16.) Accordingly, Defendants assert Plaintiff's two causes of action—(1) race/color (Black and Indian) discrimination in violation of Title VII, and (2) national origin (United States citizen, African American, Caribbean American, and Haitian American) discrimination in violation of Title VII—should be dismissed as a matter of law. (*Id.* at 3 (citing ECF No. 47-2 (Defs.' Statement of Undisputed Material Facts In Supp. of Mot. For Summ. J.) ¶ 1).)

Defendants make four arguments in support of their Motion. First, Defendants assert they are entitled to summary judgment because Plaintiff cannot establish a *prima facie* case of race/color or national origin discrimination. (ECF No. 47-1 at 3–11.) Second, Defendants contend even if the Court determined Plaintiff established a *prima facie* case of discrimination, they are still entitled to summary judgment because TD Bank had a legitimate, non-discriminatory reason for terminating Plaintiff's employment—"his ongoing deficient performance and failure to complete his PIP." (ECF No. 47-1 at 11.) Third, Defendants claim Plaintiff cannot point to any evidence showing their reason for terminating his employment was pretextual because: (1) there have not been any inconsistencies in TD Bank's stated reason for terminating Plaintiff's

employment; (2) Plaintiff's statements and beliefs about Ms. Gordon[3] do not support his claim of pretext; (3) Plaintiff's "continuous performance issues are well-documented in the record"; and (4) Plaintiff's allegations "are based on nothing more than his own speculation, conjecture, and completely unsupported beliefs that illegal discrimination played a role in his termination[,]" which is not sufficient to show pretext as a matter of law. (ECF No. 47-1 at 11–15; *id.* at 13 n.1 (citing ECF No. 47-2 ¶¶ 21–35).) Fourth, and finally, Defendants state the Court should, at a minimum, dismiss Mr. Nisbet and Ms. Gordon as individual defendants in this action because Title VII does not allow for individual liability. (ECF No. 47-1 at 15–16.) In sum, Defendants state "[t]here are no genuine issues of material fact, and Plaintiff cannot establish the elements to maintain each of his claims," and accordingly the Court should grant their Motion for Summary Judgment. (ECF No. 47-1 at 3, 16.)

In opposition, Plaintiff argues he establishes a *prima facie* case of race/color or national origin discrimination because: (1) he is a member of a protected class—African-American and West Indian; (2) he was qualified for his position at TD Bank—he states he has a Bachelor's degree in Economics, a Masters of Business Administration ("MBA") in Finance, more than five years of related working experience including "over 15 years working in finance, and 4 years of previous

---

[3] *See* ECF No. 47-1 at 13–14 ("According to [Plaintiff], Ms. Gordon (1) talked down to him, disrespected and discounted him, asked him to re-do his work, and set deadlines for him ([ECF No. 47-2] ¶ 40.), (2) did not give him independence and had 'excessive' one-on-one meetings and site visits with him ([ECF No. 47-2] ¶ 43.), (3) prohibited his entire team from going on a golf outing ([ECF No. 47-2] ¶ 43.), (4) 'denied [him] trainings, fair compensation, bonus, . . . [and] proper working equipment,' ([ECF No. 6] ¶ III(C)), (5) made a 'loaded reference' to him 'blow[ing] smoke,' which he interprets as a disparaging reference to his skin color ([ECF No. 47-2] ¶ 50.), and (6) generally discussed with him the difficulties of achieving things in the workplace because of race and reminded him 'about ten times' that he was a Black male ([ECF No. 47-2] ¶ 48.).").) Defendants assert that even assuming these allegations are true, there is no evidence showing these actions had anything to do with Plaintiff's race, color, or national origin. (*Id.* at 14.)

banking experience in the CRA & portfolio management field[,]" and proficiency in all the requirements for the position; (3) he experienced an adverse employment action—he was terminated from TD Bank on November 11, 2020; and (4) this adverse employment action occurred under circumstances that gave rise to an inference of unlawful discrimination— circumstances including Ms. Gordon's comment "Blows Smoke,"[4] Mr. Nisbet failing to mention George Floyd on a conference call, and being treated differently than a similarly situated colleague.[5] (ECF No. 49-1 (Pl.'s Opp'n Br.) at 5–14.)

In reply, Defendants argue Plaintiff has not pointed (and cannot point) to any admissible evidence to show a genuine issue for trial; Plaintiff cannot survive summary judgment by relying on "conclusory statements" and speculation unsupported by evidence; and Plaintiff cannot establish a *prima facie* case of discrimination or pretext. (ECF No. 54 (Defs.' Reply Br.) at 1–5.) Defendants also contend Plaintiff cannot assert new claims (e.g., retaliation) or legal theories in his opposition to summary judgment. (ECF No. 54 at 5 (citing cases).) Additionally, Defendants claim Plaintiff "cannot create disputed facts by now disagreeing with his prior deposition testimony[,]" and even if the Court considered Plaintiff's "new, unsupported allegations" as new evidence, this "does not create disputed issues of *material* fact." (ECF No. 54 at 6 (emphasis in original) (citing cases).) The Court addresses the parties' arguments below.

The parties do not dispute Plaintiff satisfies two of the four requirements (the first and third prongs) for a *prima facie* case of race/color or national original discrimination because (1) he is a member of a protected class—race (Black and Indian (ECF No. 49 (Pl.'s Resp. to Defs.' Statement

---

[4] *See supra* n.1.

[5] *See also supra* Section I.A (detailing additional acts of discrimination Plaintiff alleges he suffered).

of Undisputed Material Facts in Supp. of Mot. for Summ. J.) ¶ 1)); and (2) he suffered an adverse employment action—he was terminated from TD Bank on November 11, 2020 (*id.* ¶ 37). However, the parties dispute whether Plaintiff can establish the other two requirements (the second and fourth prongs) for a *prima facie* case of race/color or national original discrimination—i.e., that Plaintiff was qualified for his position at TD Bank and that the adverse employment action (Plaintiff's termination from TD Bank) occurred under circumstances giving rise to an inference of unlawful discrimination.

Defendants contend Plaintiff "was not objectively qualified for his position" as a Community Reinvestment Act ("CRA") Investment Asset Manager III at TD Bank because he "lacked the requisite work experience necessary for his role as a CRA Investment Manager" (e.g., "[t]here were key parts of Plaintiff's job at TD Bank that he objectively had *no* prior work experience with, including direct asset management"), and "despite receiving substantial on the job training, [Plaintiff] never became objectively qualified for his role." (ECF No. 47-1 at 4–6 (emphasis in original) (citing ECF No. 47-2 ¶¶ 15, 19–20); *see also* ECF No. 49-2 (Dep. of Terry Dor) at 68:2-69:13.) Plaintiff, however, argues he was qualified for his position as a CRA Investment Asset Manager because he has a Bachelor's degree in Economics, has an MBA in Finance, has CRA-related work experience, and was proficient in all the requirements for the position. (ECF No. 49-1 at 7–9.) Reviewing the evidence and drawing all justifiable inferences in a light most favorable to Plaintiff as the Court is required to do at summary judgment, *see Marino*, 358 F.3d at 247 (quoting *Anderson*, 477 U.S. at 255), the Court finds Plaintiff has shown that he was qualified for his position at TD Bank because the evidence reflects he had relevant educational and CRA-related work experience, even though the record shows he did not have specific prior experience with direct asset management. (*See* ECF No. 49-2 (Dep. of Terry Dor) at 68:2-69:13,

113:5-113:11; ECF No. 49-2, Ex. 18 (PDF pgs. 414–15) (Terry Dor's resume).) Therefore, the Court finds Plaintiff qualified for his position at TD Bank and meets the second prong of a *prima facie* case of discrimination.

However, the Court finds Plaintiff does not meet the fourth and final prong of a *prima facie* case of discrimination because the adverse employment action—Plaintiff's termination from TD Bank—did not occur under circumstances giving rise to an inference of unlawful discrimination. *See Rhoden*, 749 F. App'x at 88. Defendants argue Plaintiff cannot show the adverse employment action—his termination from TD Bank—occurred under circumstances giving rise to an inference of unlawful discrimination because he cannot show that similarly situated employees who were not members of his protected class were treated more favorably than him under similar circumstances, and he likewise cannot show any evidence that shows a causal nexus between his membership in a protected class and the adverse employment action. (*See* ECF No. 47-1 at 7–11; ECF No. 54 at 2–4.) Instead, Defendants assert Plaintiff was terminated because of his "ongoing deficient performance and failure to complete his PIP," not circumstances giving rise to an inference of unlawful discrimination, and therefore Plaintiff cannot show a *prima facie* case of race/color or national origin discrimination. (ECF No. 47-1 at 11.) Defendants point to evidence showing Plaintiff's performance issues in 2019 and 2020 including Plaintiff's failure to deliver certain files for his forty portfolio accounts. (*See* ECF No. 47-1 at 5–11.) Indeed, Plaintiff concedes he failed to deliver certain files for his portfolio accounts at TD Bank. (*See* ECF No. 49 (Pl.'s Resp. to Defs.' Statement of Undisputed Material Facts in Supp. of Mot. for Summ. J.) ¶ 28 ("Mr. Dor confirmed that through April 30, 2020, he had not delivered any annual review files (for his 40 portfolio accounts) and the first annual review he delivered for one account was on May 21, 2020. **Response:** Undisputed." (emphasis in original) (citing Dep. of Terry Dor at 139:9-140:10,

141:22-141:24)).)

Additional record evidence supports Plaintiff's various performance issues while employed at TD Bank. (*See, e.g.*, ECF No. 47-1 at 5 ("By the time of Plaintiff's mid-year 2020 review, Plaintiff had not delivered annual review files for any of his forty portfolio accounts. Reflecting her concern about this, in his mid-year 2020 review Ms. Gordon cautioned: 'Terry-you are at risk of not meeting objectives for FY2020 due to failure to deliver required annual reviews for the direct portfolio.'" (citing ECF No. 47-2 ¶¶ 26–28)); *id.* at 13 ("Starting in mid-2019, [Plaintiff's] performance reviews warned that he needed to become more independent and produce more. Despite this, [Plaintiff's] performance never improved, and he was placed on a PIP in August 2020, almost two years into his tenure with TD Bank." (citing ECF No. 47-2 ¶¶ 22, 29)); ECF No. 47-2 ¶¶ 21–35 (citing record evidence); ECF No. 49-5 (Dep. of Lenore Gordon), Ex. 1 (PDF pg. 206) ("[Plaintiff] has been in the role for almost 2 years now and not met any expectations to date, including professional behaviors. . . . Had a site visit, and he was late (had done this several times). This is an issue because there are quite a few folks involved and it's very obvious that he is late on almost every one. [Plaintiff] is not producing the reports that are an expectation of the role. A typical AM could produce 15 to 18 reports (conservatively), he has produced 2 in an entire year. [Ms.] Gordon has discussed this with him many times including during the mid year and year end reviews in addition to regular 1:1's. Some additional issues – Doesn't follow up[,] Doesn't follow directions[,] General professional behavior is not good[.] When [Ms.] Gordon coaches him, he just 'blows smoke' – says the right things but does not do anything about it. . . . At this point, [Ms.] Gordon has identified that [Plaintiff] is not the best fit for this job[;] he has never really met any expectations [] and refuses to even try to meet them. . . ."); ECF No. 49-5, Ex. 2 (PDF pgs. 207–09) ("While Terry voices his desire to get his work done his actions do[] not line up. . . . Beginning

late 2019, Terry was sluggish on the delivery of required work products. We discussed this issue in Nov 2019 and there was an expectation that any shortfalls in core objectives would be corrected in FY2020. It was not. In 2020, he continued with the pattern of underperformance, specifically around the delivery of annual reports in the Direct portfolio. Additionally, Terry has been on a PIP since late August and has shown very little to no improvement. . . . He consistently misses deadlines despite long lead times and reminders. . . . He does not follow up as directed. I have no idea how Terry spends his workday. . . .").) Defendants assert Plaintiff was placed on a sixty-day performance improvement plan ("PIP") because of his ongoing performance issues and Plaintiff was "informed and understood that a failure to meet its terms could result in termination of his employment." (ECF No. 47-1 at 13 (citing ECF No. 47-2 ¶¶ 29–35).) Defendants submit that "[o]nly after the 60-day PIP expired without any progress did TD Bank terminate [Plaintiff's] employment." (ECF No. 47-1 at 13 (citing ECF No. 47-2 ¶¶ 36–37).)

Moreover, Defendants contend Plaintiff's colleagues were not similarly situated to him and are not proper comparators for purposes of determining whether there was an inference of unlawful discrimination. (ECF No. 47-1 at 8.) Defendants note Plaintiff "claims that his Caucasian colleagues Mr. Mullarkey, Mr. Swiderek, and 'Phyllis' received opportunities to move around that he did not."[6] (*Id.*) But Defendants assert "[t]hese alleged 'opportunities' [] were inapplicable to Plaintiff." (*Id.*) Defendants state: (1) Mr. Mullarkey is not a proper comparator as a matter of law because Mr. Mullarkey was "not identical in title" to Plaintiff (ECF No. 54 at 2); (2) "Mr. Mullarkey moved departments before [Plaintiff] worked at the Bank" (ECF No. 47-1 at 8 (citing

---

[6] However, the Court notes Plaintiff only references Mr. Mullarkey as an alleged comparator in his Opposition; he does not mention Mr. Swidereck or "Phyllis" as alleged comparators in his Opposition. (*See* ECF No. 49-1.)

ECF No. 47-2 ¶ 38); *see also* ECF No. 54 at 2); (3) "Mr. Swiderek "had a different title and different responsibilities as compared to Plaintiff, and worked out of Portland, Maine" (ECF 47-2 ¶ 9 (citing Dep. of Terry Dor at 89:2-89:14, 89:22-89:23; Dep. of Dwight Swiderek at 11:24-12:5)); (4) "Mr. Swiderek changed departments only after leaving and then later returning to TD Bank (something [Plaintiff] has not tried to do)" (ECF No. 47-1 at 8 (citing ECF No. 47-2 ¶ 38)); (5) Phyllis was an investment officer, "which was a different position with different responsibilities compared to the position [Plaintiff] held" (ECF 47-2 ¶ 14 (citing Dep. of Terry Dor at 293:18-294:9)); and (6) while Plaintiff "claims Phyllis was permitted to work at other TD Bank locations, he does not know if she received permission to work at other locations or her job required her to report to various locations at particular times." (ECF No. 47-1 at 9 (citing ECF No. 47-2 ¶¶ 38–39)). Indeed, Plaintiff does not dispute these facts. (ECF No. 49-1 at 11; ECF No. 49 (Pl.'s Resp. to Defs.' Statement of Undisputed Material Facts in Supp. of Mot. for Summ. J.) ¶¶ 9, 38–39.) Defendants also claim there is no evidence showing Plaintiff's colleagues had performance issues similar to Plaintiff's and/or were on a PIP, unlike Plaintiff. (ECF No. 47-1 at 9; ECF No. 54 at 2 (citing cases).) And Plaintiff does not argue otherwise.

However, Plaintiff maintains the adverse employment action—his termination from TD Bank—occurred under circumstances giving rise to an inference of unlawful discrimination. (ECF No. 49-1 at 9–14.) Plaintiff alleges his former colleague, Scott Mullarkey, a Caucasian American,[7]

---

[7] The Court notes that Plaintiff's Opposition does not mention Mr. Mullarkey's race or national origin anywhere, but the Court determined Mr. Mullarkey was Caucasian American from the documents submitted in connection with Defendants' Motion. (*See* ECF No. 49 (Pl.'s Resp. to Defs.' Statement of Undisputed Material Facts in Supp. of Mot. for Summ. J.) ¶ 12 ("Mr. Mullarkey (Caucasian and American) had a different position than Plaintiff. **Response:** Undisputed." (emphasis in original) (citing Dep. of Terry Dor at 96:9-96:13; and then citing Dep. of Scott Mullarkey at 12:15-12:23)); ECF No. 54-1 (Defs.' Resps. to Pl.'s Addt'l Statement of

was similarly situated to him but was treated more favorably than him. (ECF No. 49-1 at 9 ("Mr. Mullarkey was promoted in 2021 shortly after I was terminated[;] the timing gave rise to the inference of unlawful discrimination."); ECF No. 49-1 at 11 ("Even though not identical in title Mr. Mullarkey is a similar[ly] situated comparator as we were both asset managers reporting to Ms. Gordon. . . . My colleague received more favorable treatment because Ms. Gordon changed the performance standard to benefit everyone except for me. . . ."); *id.* ("Mr. Mullarkey was able to transfer departments and return to the CRA team. When I looked to transfer departments I was terminated. This is another instance where a similarly situated comparator outside of Plaintiff's protected class received more favorable treatment.").) However, Plaintiff does not cite to any evidence supporting these allegations. Further, even assuming *arguendo* these allegations are true, Plaintiff does not show how these allegations give rise to an inference of unlawful discrimination.

Plaintiff also contends he suffered various alleged acts of discrimination that he asserts comprise circumstantial evidence giving rise to an inference of unlawful discrimination. However, Plaintiff again does not cite to any evidence supporting these allegations. Even assuming *arguendo* his allegations are true, Plaintiff does not show how these allegations give rise to an inference of unlawful discrimination. Plaintiff's conclusory allegations and unsworn statements unsupported by record evidence[8] are insufficient to raise a material dispute of fact and survive summary judgment. *See, e.g.*, *United States ex rel. Doe v. Heart Sol., PC*, 923 F.3d 308, 315 (3d Cir. 2019) (concluding an unsworn statement not given under penalty of perjury "was insufficient to create an issue of fact on summary judgment"); *Byrne v. Monmouth Cnty. Dep't of Health Care Facilities*,

---

Facts) ¶ 74 (stating in part: "Defendants admit that . . . Mr. Mullarkey identified his race as Caucasian.").)

[8] In his Opposition, Plaintiff does not cite to any evidence or to either party's statement of material facts. (*See* ECF No. 49-1.)

372 F. App'x 232, 234 (3d Cir. 2010) ("An opponent of summary judgment cannot rely upon unsupported assertions, conclusory allegations, or mere suspicions to create a disputed issue." (citations omitted)); *Greaves v. Shinseki*, Civ. A. No. 11-06270, 2013 WL 3778368, at *9 (E.D. Pa. July 19, 2013) ("A plaintiff's own unsworn statements are not sufficient evidence to dispute a fact in response to a summary judgment motion." (citations omitted)); *Mitnik v. Cannon*, 789 F. Supp. 175, 176 (E.D. Pa. 1992) (stating unsworn "statements and allegations are not sufficient, of course, to raise a genuine issue of material fact so as to require the Court to deny the motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure" and that "the Court [would] not consider this evidence"); *see also Jersey Cent. Power & Light Co. v. Lacey Twp.*, 772 F.2d 1103, 1109–10 (3d Cir. 1985) ("Legal memoranda and oral argument are not evidence and cannot by themselves create a factual dispute sufficient to defeat a summary judgment motion.").

Additionally, Ms. Gordon is the same race (Black) and national origin (Caribbean American) as Plaintiff, which Plaintiff does not dispute (*see* ECF No. 49 (Pl.'s Resp. to Defs.' Statement of Undisputed Material Facts in Supp. of Mot. for Summ. J.) ¶¶ 1, 4; ECF No. 49-1 at 13), and this fact weighs against an inference of discrimination. *See Warenecki v. City of Philadelphia*, Civ. A. No. 10-01450, 2010 WL 4344558, at *9 (E.D. Pa. Nov. 3, 2010) ("Where the person responsible for Plaintiff's termination was a member of Plaintiff's racial group, that fact weighs against an inference of discrimination."). It is Plaintiff's burden to provide some affirmative *evidence*, not just mere allegations or Plaintiff's say-so, to establish a *prima facie* case of intentional discrimination and to show that there is a genuine dispute for trial. Plaintiff has not met his burden here. Plaintiff's conclusory statements do not show "circumstantial evidence that otherwise shows a causal nexus between his membership in a protected class and the adverse employment action." *Greene*, 557 F. App'x at 195. Accordingly, the Court finds the adverse

employment action—Plaintiff's termination from TD Bank—did not occur under circumstances giving rise to an inference of unlawful discrimination because on this record, no reasonable jury could conclude that TD Bank's decision to terminate Plaintiff's employment was an intentional decision based on his race, color, and/or national origin. Therefore, the Court concludes Plaintiff cannot meet his burden in establishing by a preponderance of the evidence a *prima facie* case of race/color or national origin discrimination under the first prong of the *McDonnell Douglas* burden-shifting framework.

Defendants further claim that even if the Court found Plaintiff established a *prima facie* case of discrimination, they are still entitled to summary judgment because TD Bank had a legitimate, non-discriminatory reason for terminating Plaintiff's employment. (ECF No. 47-1 at 11.) Defendants also state Plaintiff cannot point to any evidence showing their reason for terminating his employment was pretextual and accordingly cannot meet his burden under the *McDonnell Douglas* burden-shifting framework. (ECF No. 47-1 at 11–15.) Because the Court finds Plaintiff does not establish a *prima facie* case of discrimination under the first prong of the *McDonnell Douglas* burden-shifting framework, it does not reach the analysis under the remaining prongs of the *McDonnell Douglas* framework.

Therefore, Defendants' Motion for Summary Judgment is **GRANTED** in Defendants' favor on all of Plaintiff's claims.

### B. Summary Judgment Is Warranted as to the Title VII Claims Against the Individual Defendants

Defendants also argue Plaintiff cannot assert Title VII claims against Mr. Nisbet and Ms. Gordon because individual employees cannot be held liable under Title VII, and for this additional reason, the Court should dismiss all claims against Mr. Nisbet and Ms. Gordon. (ECF No. 47-1 at 15–16.) The Court agrees. "Title VII prohibits unlawful employment practices [including

discrimination] by employers." *Emerson v. Thiel Coll.*, 296 F.3d 184, 190 (3d Cir. 2002) (citing 42 U.S.C. § 2000e-2(a)). Title VII defines "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees . . . and any agent of such a person[.]" 42 U.S.C. § 2000e(b). Individual employees, however, are not liable under Title VII. *Emerson*, 296 F.3d at 190 (citing *Sheridan v. E.I. DuPont de Nemours & Co.*, 100 F.3d 1061, 1077–78 (3d Cir. 1996)); *see also Dieffenbach v. Dep't of Revenue*, 490 F. App'x 433, 435 (3d Cir. 2012) ("We conclude that the District Court's dismissal of the Title VII claims against the individual defendants was proper because under Title VII individual employees cannot be held liable." (citing *Sheridan*, 100 F.3d at 1078)); *Mitchell v. N.J. Lottery*, Civ. A. No. 04-00896, 2006 WL 1344092, at *8 (D.N.J. May 15, 2006) ("If the defendant is not [the] plaintiff's employer, . . . it is irrelevant whether that person was acting in an official or individual capacity, for a Title VII suit may not be properly maintained against the individual." (alterations in original) (citation omitted)). Accordingly, the Court concludes Plaintiff cannot assert Title VII claims against Mr. Nisbet and Ms. Gordon because they are not Plaintiff's "employer" as that term is defined in Title VII; rather, they are individual employees at TD Bank and, as such, cannot be held liable under Title VII.

Further, because Plaintiff's prior employer TD Bank is also a Defendant here, Plaintiff's claims against Mr. Nisbet and Ms. Gordon are redundant, and Plaintiff would suffer no prejudice by the Court dismissing his claims against those two individuals. *See Mitchell*, 2006 WL 1344092, at *8 ("None of the individual defendants are the plaintiff's 'employer' under Title VII, nor has the plaintiff alleged as much. The plaintiff has named her employer, the Lottery, as a defendant in this action. Moreover, because the plaintiff has designated her actual 'employer' as a defendant, she suffers no prejudice by the Court dismissing her . . . claims against the individual defendants." (citations omitted)).

Therefore, Defendants' Motion for Summary Judgment (ECF No. 47) is **GRANTED** on this additional ground as to all claims against Mr. Nisbet and Ms. Gordon.

### C. Plaintiff's Deficient Summary Judgment Filings and Apparent New Claims Asserted for the First Time in Opposition to Defendants' Summary Judgment Motion

As Defendants note in their Reply (ECF No. 54 at 5–7),[9] Plaintiff's summary judgment filings are deficient because they do not fully comply with the applicable Federal Rules of Civil Procedure and the Local Civil Rules (*see* ECF Nos. 49, 49-1).[10] Federal Rule of Civil Procedure 56.1(c)(1) provides that a party asserting a fact is (or cannot be) genuinely disputed must support the assertion by (A) "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" or (B) "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Additionally, Local Civil Rule 56.1(a) states a party opposing summary judgment must state whether they agree or disagree with each paragraph of the movant's statement of material facts as to which there is no genuine issue, and if they disagree, they must indicate "each material fact in dispute and cit[e] to the affidavits

---

[9] Specifically, Defendants state: (1) Plaintiff failed to include in his opposition brief any citations to either party's Statement of Facts in violation of Federal Rule of Civil Procedure 56(c)(1)(A); (2) Plaintiff largely failed to cite to the record in his responses to Defendants' Statement of Undisputed Material Facts and in his Additional Statement of Undisputed Material Facts in violation of Local Civil Rule 56.1(a); and (3) Plaintiff's Additional Statement of Undisputed Material Facts contains legal arguments and conclusions also in violation of Local Civil Rule 56.1. (ECF No. 54 at 6.)

[10] Defendants state the Court should reject Plaintiff's deficient summary judgment submissions. (ECF No. 54 at 6 (citing cases).) While the Court agrees Plaintiff's summary judgment filings are deficient, it declines to reject Plaintiff's submissions solely on this basis, particularly given Plaintiff's *pro se* status, and instead exercises its discretion to consider the substance of Plaintiff's Opposition.

and other documents submitted in connection with the motion." L. Civ. R. 56.1(a). Local Civil Rule 56.1(a) also says the statement of material facts "shall not contain legal argument or conclusions of law." *Id.*

Here, Plaintiff failed to comply with the applicable federal and local rules for summary judgment because while he submitted over 1,400 pages of exhibits in support of his Opposition to Defendants' Summary Judgment Motion (*see* ECF Nos. 49-2 through 49-10, 50, 52), he did not cite to any record evidence or to either party's statement of material facts in his Opposition (*see* ECF No. 49-1), which renders considering Plaintiff's Opposition unduly burdensome for the Court. In addition, Plaintiff largely failed to cite to supporting evidence in his responses to Defendants' Statement of Undisputed Material Facts and in his Additional Statement of Undisputed Material Facts in violation of Local Civil Rule 56.1(a). (*See* ECF No. 49; *e.g.*, *id.* ¶¶ 24, 30–35 (disputing Defendants' Statements of Material Fact but not citing any supporting evidence in response).)

It is not the Court's responsibility to sift through the record—let alone a voluminous record like the one here—to find evidence supporting Plaintiff's position. *See Doeblers Pa. Hybrids, Inc. v. Doebler*, 442 F.3d 812, 820 n.8 (3d Cir. 2006), *as amended* (May 5, 2006) ("'Judges are not like pigs, hunting for truffles buried in' the record." (citation omitted)); *United States v. Dentsply Int'l, Inc.*, Civ. A. No. 12-07199, 2016 WL 1403991, at *1 (E.D. Pa. Apr. 11, 2016) ("In reviewing a motion for summary judgment, the court may consider any materials in the record but is not required to look beyond those materials cited by the parties. It is not the responsibility of the court to 'comb the record in search of disputed facts.'" (citing Fed. R. Civ. P. 56(c)(3), and then quoting *N.J. Carpenters Pension Fund v. Hous. Auth. & Urban Redevelopment Agency*, 68 F. Supp. 3d 545, 549 (D.N.J. 2014))). Even though the Court is sympathetic to Plaintiff's *pro se* status, this

does not excuse Plaintiff from complying with the applicable Federal Rules of Civil Procedure and Local Rules. *See Bello v. Romeo*, 424 F. App'x 130, 133 (3d Cir. 2011) (noting *pro se* litigants are required to comply with the summary judgment procedures outlined in Federal Rule of Civil Procedure 56 (citing *Zilich v. Lucht*, 981 F.2d 694, 696 (3d Cir. 1992))); *see also Morrison v. Rochlin*, 778 F. App'x 151, 155 n.5 (3d Cir. 2019) ("We recognize that [plaintiff's] filings in opposition to summary judgment are not sworn and that even pro se litigants generally must at least submit an affidavit to avoid summary judgment." (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 249 (3d Cir. 2013)).

Nevertheless, the Court reviewed and considered Plaintiff's summary judgment submissions and viewed them in a light most favorable to Plaintiff as it is required to do at summary judgment. And because Plaintiff is *pro se*, the Court considered the substance of his Opposition despite his non-compliance with the applicable federal and local rules. *See Washington v. Ellis*, Civ. A. No. 17-07243, 2021 WL 2982175, at *2 (D.N.J. July 15, 2021) ("It is well settled that '[a] pro se plaintiff is "entitled to a certain degree of leniency so as to ensure that her case is decided on its merits rather than a procedural technical[ity]."'" (alterations in original) (citations omitted)). Even so, as explained above, the Court does not find any genuine issue for trial.

Separately, Plaintiff also appears to be trying to assert additional claims for the first time in his opposition to Defendants' summary judgment motion.[11] (*See* ECF No. 49-1 at 4 ("In addition, because of further developments in the case, you will experience moments referencing other actionable causes not mentioned in the initial complaint such as, sexual misconduct,

---

[11] In his Complaint and Amended Complaint, Plaintiff only alleged Title VII discrimination claims on the basis of race/color and national origin; he did not allege any claims for retaliation, sexual misconduct, whistleblower, Title VI violation, wage discrimination, or anything else. (*See* ECF Nos. 1, 6.)

whistleblower, Title VI/Tax Credit Ponzi Scheme, and wage discrimination. All of which became more evident during/after the discovery phase."); *id.* at 16 ("I gave my honest feedback in a confidential employee survey in 2019 about management. Ms. Gordon openly reviewed the confidential employee survey with the CRA team. The following year 2020 I began receiving threats and eventually placed on a PIP in retaliation. November 11th 2020 I was retaliated against and was terminated.").) Defendants argue "it is well-settled that a litigant cannot raise new claims outside of a complaint in opposition to a motion for summary judgment" and Plaintiff's attempt to do so "is impermissible and unsuccessful." (ECF No. 54 at 5 (citing cases).) To the extent Plaintiff was attempting to amend his complaint by way of asserting new claims (e.g., retaliation[12]) in his opposition to Defendants' summary judgment motion, the Court declines to treat these new allegations as a constructive motion to amend. *See Taylor v. Sanders*, 536 F. App'x 200, 203 (3d Cir. 2013) ("At the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Fed. R. Civ. P. 15(a)." (citation omitted)); *Bell v. City of Philadelphia*, 275 F. App'x 157, 160 (3d Cir. 2008) ("A plaintiff 'may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment.'" (citation omitted)). "District Courts have broad discretion to disallow the addition of new theories of liability at the eleventh hour." *Carr v. Gillis Associated Indus., Inc.*, 227 F. App'x 172, 176 (3d Cir. 2007). *See also Mediavilla v. City of New York*, 259 F. Supp. 3d 82, 106 (S.D.N.Y. 2016) ("It

---

[12] Defendants note Plaintiff "does not assert a retaliation claim against Defendants" yet Plaintiff asserts, without citing evidence, that he was placed on a PIP "out of retaliation ([even though] he does not assert a retaliation claim against Defendants) because Ms. Gordon did not like his responses on an employee survey." (ECF No. 54 at 1 (citing ECF No. 49-1 at 21).) Defendants contend this statement is "purely speculative" and "[t]here is no record evidence about the confidentiality of survey responses, whether Ms. Gordon was unhappy with [Plaintiff's] responses, much less that Ms. Gordon even knew about [Plaintiff's] responses, or whether she took her unhappiness out on him." (ECF No. 54 at 1–2.)

is well settled that a litigant may not raise new claims not contained in the complaint in opposition to a motion for summary judgment." (citing *Avillan v. Donahoe*, 483 F. App'x 637, 639 (2d Cir. 2012)); *cf. Schmees v. HC1.COM, Inc.*, 77 F.4th 483, 490 (7th Cir. 2023) ("[A] district court retains discretion to treat new claims presented for the first time in briefing as a constructive motion to amend. It will rarely be appropriate to do so.").

## IV.   CONCLUSION

For the reasons set forth above, Defendants' Motion for Summary Judgment (ECF No. 47) is **GRANTED**. An appropriate Order follows.


*/s/ Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
UNITED STATES DISTRICT JUDGE

Dated:  December 29, 2023